UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Kate Barton,

     Plaintiff,

v.

Ocwen Loan Servicing LLC and
Saxon Mortgage Services, Inc.

     Defendants.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 12-162 (MJD/JJG)

_____

Thomas J. Lyons, Jr., Consumer Justice Center, P.A., and Thomas J. Lyons, Lyons Law Firm, P.A., Counsel for Plaintiff.

David R. Mortensen, Wilford, Geske & Cook, P.A., Counsel for Defendant Ocwen Loan Servicing, LLC.

Michael J. Steinlage and Hilary J. Loynes, Larson King, LLP, Counsel for Defendant Saxon Mortgage Services, Inc.

_____

This matter is before the Court on Ocwen Loan Servicing LLC's ("Ocwen")

motion to dismiss and Saxon Mortgage Services, Inc.'s ("Saxon") motion to

dismiss or in the alternative for summary judgment.

## I.    Background

On September 30, 2005, Plaintiff entered into two loans - a first mortgage in

the amount of $148,000 and a second mortgage in the amount of $37,000 - both

secured by property located at 1185 Hillcrest Ct., Woodbury, Minnesota.

(Affidavit of Eudiel Toval Aff. ¶¶ 6, 7.)  Saxon serviced the first mortgage from

August 2008 until the property was sold following foreclosure in October 2010.

(Id. ¶ 6.)  HomeEq Servicing serviced the second mortgage until October 2008, at

which time Ocwen began servicing that loan.  (Complaint ¶ 21.)  Saxon thereafter

acquired the servicing of the second mortgage on October 17, 2011.  (Id. ¶ 7.)

Saxon ceased servicing the second mortgage on January 20, 2012.  (Id.)

On October 15, 2008 Plaintiff filed a voluntary petition pursuant to Chapter

7 of the Bankruptcy Code.  (Steinlage Decl., Ex. A.)  In her bankruptcy

proceeding, Plaintiff filed a "Chapter 7 Individual Debtor's Statement of

Intention - Amended" in which she stated her intention to "retain collateral and

continue to make regular payments" on the first and second mortgages to her

home.  (Toval Aff., Ex. 2.)  The Bankruptcy Court issued a discharge order in

Plaintiff's bankruptcy on January 30, 2009.  (Steinlage Decl., Ex. B.)

Plaintiff brings this action based on alleged attempts by Defendants to

collect on the second mortgage following the discharge of such debt in

bankruptcy and because Defendants illegally obtained copies of her credit report.

In her Complaint, Plaintiff generally alleges that Defendants illegally obtained

2

and used her personal credit information from Experian Information Solutions ("Experian") because Defendants did not have a current or past credit relationship with Plaintiff.  (Complaint ¶ 5.)  She further alleges that Defendants intentionally misrepresented to Experian that Plaintiff was attempting to obtain credit and that Plaintiff had an existing credit relationship with them, causing Experian to release highly confidential and sensitive information.  (Id. ¶¶  6, 7.) Plaintiff further alleges that on January 21 and 22, and October 28, 2010, Saxon illegally obtained a copy of Plaintiff's Experian credit report.  (Id. ¶¶ 10, 11 and 13.)  On September 8, 2010, and July 27, 2011, Plaintiff alleges that Ocwen illegally obtained and used a copy of Plaintiff's Experian credit report.  (Id. ¶¶ 12 and 14.)

Plaintiff further alleges that once Ocwen began servicing the second mortgage in October 2008, Ocwen placed persistent, invasive and harassing telephone calls to Plaintiff on her cell phone, despite the fact that she continuously put Ocwen on notice that the debt had been discharged in bankruptcy and referred Ocwen to her bankruptcy attorney.  (Id. ¶ 22.)  Plaintiff further alleges that Ocwen sent written collection correspondence to Plaintiff as well, from May through September 2011, seeking to illegally collect on the discharged $37,000 loan.  (Id. ¶ 24.)

Plaintiff further alleges that Saxon also sent her written communications that demanded payment on the discharged loan in violation of federal law.  (Id. ¶ 29.)  Plaintiff did not, however, allege when such correspondence was sent, or the contents of such correspondence.  In response to Saxon's motion to dismiss, however, Plaintiff did submit the first page of a letter sent by Saxon on or before October 17, 2011.  (Barton Aff., Ex. 1.)

Based on the above allegations, Plaintiff has asserted the following claims: Count I - violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681b(f) by accessing Plaintiff's credit history without a permissible purpose; Count II - Violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692; Count III - violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227; Count IV - invasion of privacy by intrusion upon seclusion; Count V - Credit Defamation; and Count VI - violations of 11 U.S.C. §§ 362 (automatic stay upon filing bankruptcy petition) and 524 (discharge of debt in bankruptcy).

## II.   Standard for Motion to Dismiss

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move the Court to dismiss a claim if, on the pleadings, a party has failed to state a claim upon which relief may be granted.  In reviewing a motion to dismiss, the

4

Court takes all facts alleged in the complaint to be true.  <u>Zutz v. Nelson</u>, 601 F.3d

842, 848 (8th Cir. 2010).

> To survive a motion to dismiss, a complaint must contain sufficient
> factual matter, accepted as true, to state a claim to relief that is
> plausible on its face.  Thus, although a complaint need not include
> detailed factual allegations, a plaintiff's obligation to provide the
> grounds of his entitlement to relief requires more than labels and
> conclusions, and a formulaic recitation of the elements of a cause of
> action will not do.

<u>Id.</u> (citations omitted).

When considering a motion to dismiss under Rule 12(b)(6), the Court may

consider any document that is incorporated in the complaint by reference.

<u>Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc.</u>, 406 F.3d 1052, 1063, n.

3 (8th Cir. 2005) (court found that examination of a press release was proper in

considering motion to dismiss "even though it was not expressly part of the

pleadings, because it was incorporated into the pleadings by reference-the

complaint specifically mentioned it as a ground for [plaintiff]'s claims against

[defendants]).

Plaintiff did not attach any exhibits to her Complaint.  In support of its

motion to dismiss/summary judgment, Saxon has submitted documents filed in

her bankruptcy proceeding, including the discharge order and the letter Saxon

sent Plaintiff concerning the second mortgage.  Because Plaintiff references the

bankruptcy proceedings and written communications sent by Saxon in the

Complaint, the Court can consider these documents in determining whether

Plaintiff has stated claims for relief under Rule 12(b)(6).

## III.   Analysis

### A.   Fair Credit Reporting Act

In her Complaint, Plaintiff alleges that on specific dates in 2010 and 2011,

Defendants obtained and used a copy of her credit report without a permissible

purpose as set forth in § 1681b(f).  Permissible purposes for accessing a credit

report include, but are not limited to, a person seeking a credit report in

connection with a possible credit transaction, employment purposes, servicing of

an existing credit obligation, or an otherwise legitimate business need.  15 U.S.C.

§ 1681b(a)(3)(A), (B), (E) and (F).  Under the FCRA, if Plaintiff can prove that

Defendants violated the FCRA, she could be entitled to damages and attorney's

fees for either a willful or negligent violation thereunder.  15 U.S.C. §§ 1681n and

1681o.

Ocwen asserts that the statute's language presumes that before damages

may be awarded, a plaintiff must demonstrate she actually sustained damages

6

because the defendant accessed her credit report without a permissible purpose. In this case, Ocwen argues that Plaintiff alleges only generally that she was damaged, and that she failed to allege any supportable damages that can be attributed to Ocwen.  For example, she alleges that she was denied approval for credit, but the alleged facts also support a finding that such denial could have been caused by her own actions - filing for bankruptcy and allowing her first mortgage to be foreclosed.  Because Plaintiff has only included conclusory allegations of damages, Ocwen argues this claim should be dismissed.

Ocwen further asserts that Plaintiff makes no distinction between Ocwen's conduct and Saxon's conduct.  Before filing her Complaint, Plaintiff could have contacted the entities that denied her credit and requested an explanation for such denial, but she failed to do so.  Ocwen argues that it should not be forced to defend this action because Plaintiff has failed to properly investigate her claims.

The Court finds that pursuant to Rule 12(b)(6), Plaintiff has sufficiently stated a claim against Ocwen under the FCRA.  She alleges that after November 1, 2008, she did not have a credit relationship with Ocwen. (Comp. ¶ 5.) Nonetheless, Ocwen obtained and used a copy of her credit report on September 8, 2010 and July 27, 2011.  (Id. ¶¶ 12 and 14.)  As to damages, Plaintiff has alleged

that as a result of Ocwen obtaining her credit report, the resulting "fingerprints"

had an adverse impact on her credit score, which resulted in her being denied

credit by Capital One and Fifth Third Bank.  (Id. ¶¶ 54, 55.)  Plaintiff has also

sufficiently alleged that as a result of Ocwen's conduct, she has suffered

emotional distress.  See Meyer v. F.I.A. Card Services, N.A., 780 F. Supp.2d 879,

885 (D. Minn. 2011) (finding plaintiff's claims of emotional distress sufficient to

withstand summary judgment).  Whether Plaintiff can prove causation is a fact

question that should not be resolved at the pleading stage.  Reed v. Experian Info.

Solutions, 321 F. Supp.2d 1109, 1114-15 (D. Minn. 2004).

Finally, as to damages for statutory and punitive damages, Plaintiff asserts

such damages are available for willful noncompliance, which covers knowing

and reckless violations of the FCRA.  Safeco Ins. of Am. v. Burr, 551 U.S. 47, 57

(2007).  Plaintiff has alleged that she repeatedly informed Ocwen that her

obligation to pay the second mortgage was discharged in bankruptcy.  (Comp.

¶¶ 5, 22.)  Nonetheless, Ocwen obtained her credit report in 2010 and 2011.  (Id.

¶¶ 12, 14.)   She further alleges that Ocwen misrepresented to Experian that

Plaintiff was seeking credit from Ocwen or that Ocwen had a current credit

relationship with Plaintiff.  (Id. ¶¶ 6, 8.)  The Court thus finds that Plaintiff has

8

sufficiently alleged that Ocwen's conduct was willful, which would entitle her to statutory and punitive damages.

Saxon also moves to dismiss the FCRA claim against it, as Plaintiff has failed to allege sufficient facts to support the claim that she suffered damages as a result of Saxon's alleged violations.  Even if Saxon did wrongfully access Plaintiff's credit history in January and October 2010, any detriment to her credit score or emotional distress can, as a matter of law, be attributed to her bankruptcy filing and her subsequent foreclosure.

As the Court noted above, however, whether Plaintiff will be able to prove causation is a fact question that should not be resolved at the pleading stage.

In the alternative, Saxon argues it is entitled to summary judgment as Plaintiff made voluntary payments on the first mortgage after the discharge order was issued in her bankruptcy proceeding.  Further, Saxon asserts that Plaintiff does not dispute that Saxon continued to service the first mortgage until the property was sold after foreclosure in October 2010. (Tovar Aff. ¶ 6)  Saxon argues that as long as it had a good faith belief that a permissible purpose existed for it to access Plaintiff's credit report in January and October 2010, Saxon did not, as a matter of law, violate the FCRA by pulling said report.  See Beckstrom v.

<u>Direct Merchant's Credit Card Bank</u>, No. 04-1351, 2005 WL 1869107, at * 3 (D.

Minn. Aug. 5, 2005).

Plaintiff argues that summary judgment is not appropriate as she did not

sign a reaffirmation agreement as requested by Saxon.  (Barton Aff. ¶ 6.)  She

further argues that even if she made some payments on the first mortgage after

the discharge, the discharge nonetheless relieved her of personal liability for such

debt.  Finally, Plaintiff asserts that whether Saxon "recklessly disregarded" her

rights under the FCRA should not be determined at the pleading stage.  <u>See</u>

<u>Safeco</u>, 551 U.S. at 47 (whether plaintiff entitled to statutory and punitive

damages under FCRA is a question of fact).

Saxon replies that the FCRA does not define "credit relationship" as one

requiring personal liability.  Instead, the FCRA - for purposes of addressing

violations of the FCRA - focuses on the intent of the party obtaining the credit

report.  <u>Miller v. Rubin & Rothman, LLC</u>, No. 10-2198, 2011 WL 4359977, at *3 (D.

Minn. Sept. 19, 2011).  Saxon asserts that under circumstances where a borrower

is voluntarily making payments on a discharged loan and requesting financial

accommodations to avoid foreclosure, a lender would be justified in believing it

had a permissible purpose to pull the credit report.  Here, Saxon was pulling

10

information on a loan on which Plaintiff continued to communicate, and on

which Plaintiff repeatedly requested financial accommodation, including loan

modifications and a leave to sell the property on a short sale.  Saxon asserts these

actions are indicative of a credit relationship, whether or not Plaintiff was

personally liable for the debt.

On this record, the Court finds that summary judgment is not appropriate

as the Plaintiff disputes whether a credit relationship existed.  Therefore, the

record needs to be developed as to whether and when Plaintiff made voluntary

payments on the first and second mortgages following the discharge in

bankruptcy, and the substance of communications between the parties with

regard to the mortgages.

**B.     Fair Debt Collection Practices Act**

Plaintiff claims that Defendants' attempts to collect on a debt that was

discharged in bankruptcy is a violation of federal law, as the FDCPA prohibits

harassment or abuse, the use of false or misleading statements or unfair practices

when collecting a debt.  15 U.S.C. §§ 1692d, 1692e and 1692f.  To recover damages

on a violation of the FDCPA, however, such claim must be brought within one

year from the day the violations occurred.  15 U.S.C. § 1692k(d).  This action was

filed on January 20, 2012, therefore any communication from Defendants prior to January 2011 cannot form the basis of Plaintiff's FDCPA claim.

In the Complaint, Plaintiff alleges that Ocwen placed persistent, invasive and harassing telephone calls to her between 2008 and late 2010.  (Id. ¶ 22.) Because these calls took place prior to January 2011, the Court finds that any FDCPA claim based on such calls are time-barred.

Plaintiff also alleges that Ocwen sent her letters in May, August and September 2011, seeking to illegally collect on the discharged loan.  Ocwen argues that her claims with respect to these letters are generic and lack any description or summary of the contents of the letter.  Ocwen asserts that the contents of these letters are essential to any claim under the FDCPA, as it is not enough that a statement is "merely 'susceptible of an ingenious misreading.'" Peters v. Gen. Serv. Bureau, Inc., 277 F.3d 105, 1056 (8th Cir. 2002).

Plaintiff has alleged that Ocwen sent her letters in May, August and September 2011 seeking to illegally collect the discharged second mortgage loan. (Comp. ¶ 24.)   The act of "illegally" attempting to collect on a discharged loan is sufficient to put Ocwen on notice of what conduct violated the FDCPA.  See Ross v. RJM Acquisitions Funding LLC, 480 F.3d 493, 495 (7th Cir. 2007) (finding that

efforts to collect a discharged debt are unlawful and is prohibited by the FDCPA).

Ocwen further asserts that it was and is a loan servicer, not a debt collector. The FDCPA exempts from the definition of "debt collector" those who had the responsibility for collecting the debt prior to the time it went into default.  See 15 U.S.C. § 1692a(6)(F)(iii) (debt collector does not include "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . (iii) concerns a debt which was not in default at the time it was obtained by such person"  See also Alexander v. Omega Mgmt, Inc., 67 F. Supp.2d 1052, 1055 (D. Minn. 1999).  Ocwen thus argues that the claim should be dismissed as failing to state a claim.  The Court disagrees.

A person that acquires a debt for the purpose of collecting the debt in default is a debt collector.  See Stark v. Sandberg, Phoenix & von Gontard, P.C., 381 F.3d 793, 797 (8th Cir. 2004).  The Complaint alleges that HomEq sold the loan to Ocwen sometime in October 2008.  (Comp. ¶ 21.)  Plaintiff filed for bankruptcy in October 2008.  From these allegations, the Court finds that the Complaint plausibly alleges that Ocwen acquired the loan when it was in default.

Saxon also argues that Plaintiff has not alleged sufficient factual allegations

to support a claim against it under the FDCPA.  Instead, Plaintiff generally

alleges Saxon violated the FDCPA by making collection calls after being warned

that Plaintiff did not owe the debt at issue and by sending written

communications that demanded payment.  (Id. ¶¶ 26, 29.)  There are no

allegations of the dates such calls were made or when the letters were sent out.

Plaintiff responds that she properly alleged that Saxon acquired the

servicing of the second mortgage on October 17, 2011 and sent written

communications seeking to collect this discharged loan in violation of the

FDCPA.[1]   In support, Plaintiff submitted the first page of a transfer letter Saxon

sent to Plaintiff when it acquired the servicing of the second mortgage.  (Barton

Aff., Ex. 1.)  This letter provided the monthly payment for discharged debt and

instructions on how to pay.  By suggesting a payment was due, Plaintiff argues

Saxon violated the FDCPA by attempting to collect on a discharged debt.

Saxon responds that Plaintiff did not submit the entirety of the above letter;

she only submitted the first page.  The second page of the letter, however,

provides "If you have recently been discharged of your personal liability on this

---

[1]Plaintiff provides no discussion of alleged telephone calls she received from Saxon personnel, thus the Court will assume that Plaintiff's FDCPA claim against Saxon is limited to written communications.

debt due to your Chapter 7 bankruptcy, Saxon is not seeking to collect, recover,

or offset the debt as a personal liability." (Affidavit of Lindsey Selkirk, Ex. 5.)

Saxon asserts that this statement put Plaintiff on notice that in the event she filed

for bankruptcy, Saxon would not attempt to collect on the debt.

Saxon further argues that it was required to send Plaintiff a notice that the

second mortgage had been transferred to Saxon pursuant to RESPA. 12 U.S.C.

2605(b)(1). Because Saxon was required by law to send the notice of transfer to

Plaintiff, and because the letter makes clear that if Plaintiff had filed for

bankruptcy the letter should not be considered an attempt to collect, Saxon did

not violate the FDCPA. See Chase Manhattan Mortgage Corp. v. Padgett, 268

B.R. 309, 314 (S.D. Fla. 2001)); In re Whitmarsh, 383 B.R. 735, 736-37 (Bank. D.

Neb. 2008).

Based on the allegations in the Complaint, and upon review of the contents

of the transfer letter, the Court finds that Plaintiff has failed to state a claim that

Saxon violated the FDCPA by sending the transfer letter.

### C.      Telephone Consumer Protection Act

Plaintiff alleges that Defendants violated the TCPA by contacting her on

her cell phone. The TCPA prohibits the use of automated telephone equipment

to a cellular telephone for which the party is charged for the call.  47 U.S.C. §

227(b)(1)(A)(iii).  The TCPA does not prohibit a person from making a call to a

cell phone, however.  There are no allegations in the Complaint that either

Ocwen or Saxon used automated telephone equipment to call Plaintiff.

Plaintiff does not respond to this argument.  Accordingly, the Court finds

that Plaintiff has failed to state a claim under the TCPA against Defendants, and

the claim will be dismissed.

### D.    Invasion of Privacy - Intrusion Upon Seclusion

A claim for invasion of privacy, intrusion upon seclusion, will lie where

there is an "intrusion; that is highly offensive to a reasonable person; into some

matter into which a person has a legitimate expectation of privacy."   Swarthout

v. Mut. Serv. Life Ins. Co., 632 N.W.2d 741, 744 (Minn. Ct. App. 2001).  "In the

context of intrusion upon seclusion, questions about 'the reasonable person

standard are ordinarily questions of fact, * * * but they become questions of law if

reasonable persons can draw only one conclusion from the evidence.'" Id. at 745

(quoting Hougum v. Valley Mem. Homes, 574 N.W.2d 812, 818 (N.D. 1998)).

Defendants argue that Plaintiff failed to include sufficient factual

allegations to support the conclusory allegations that accessing her credit report

was highly offensive.  The Court finds, however, that Plaintiff has sufficiently

alleged that Defendants did not have a permissible purpose for obtaining her

credit report.  Whether or not the Defendants had a reasonable belief that they

had a permissible purpose to access Plaintiff's credit report should be addressed

after discovery is complete.

### E.    Credit Defamation

Plaintiff alleges Defendants intentionally misrepresented to Experian that

Plaintiff was attempting to obtain credit from them, and that Plaintiff had a

current credit relationship with them.  (Comp. ¶¶ 6, 8, 10-11, 13.)  Plaintiff alleges

that these misrepresentations left three marks on Plaintiff's credit report.  (Id. ¶

7.)  This, in effect, caused her credit score to decrease.  (Id.)  As a result, she was

denied credit.  Plaintiff further alleges that Defendants maliciously

communicated false and derogatory information about the status of the second

mortgage, when they knew or should have known that the second mortgage had

been discharged in bankruptcy, and that such false information harmed her

credit reputation.  (Comp. ¶¶ 50 and 51.)  She further alleges that because of

Defendants' defamatory conduct, she was denied credit by Capital One Auto

Finance on September 20 and 28, 2011, and by Fifth Third Bank on September 18,

2011.  (Id. ¶¶ 54 and 55.)

A claim for credit defamation is limited by 15 U.S.C. § 1681h(e), which

provides

> Except as provided in sections 1681n and 1681o of this title, no consumer
> may bring any action or proceeding in the nature of defamation, invasion
> of privacy, or negligence with respect to the reporting of information
> against any consumer reporting agency, any user of information, or any
> person who furnishes information to a consumer reporting agency, based
> on information disclosed pursuant to section 1681g, 1681h, or 1681m of this
> title, or based on information disclosed by a user of a consumer report to or
> for a consumer against whom the user has taken adverse action, based in
> whole or in part on the report **except as to false information furnished
> with malice or willful intent to injure such consumer**.  (emphasis added)

Defendants assert that Plaintiff has failed to plead any facts to support the

conclusory allegation that Defendants acted maliciously or with willful intent to

injure Plaintiff.  They argue that there are no factual allegations describing what

statements made were defamatory, and whether such statements were made by

Ocwen or Saxon.  Finally, Defendants assert that Plaintiff has not included any

allegations that credit was, in fact, denied based on Defendants' conduct versus

her filing for bankruptcy.

The Court finds that Plaintiff has sufficiently alleged a claim for credit

defamation.  The parties do not dispute that Plaintiff filed for bankruptcy in

October 2008, and that a discharge order was issued in January 2009.  Yet, her

credit report shows that the first mortgage was included in the bankruptcy, and that the second mortgage was overdue - even though the second mortgage appears to have been included in the bankruptcy.  (Barton Aff., Ex. 3.)  Plaintiff alleges that Defendants misrepresented to the credit reporting agency that the second mortgage is due and owing, even though it appears to have been discharged in bankruptcy.  (Comp. ¶ 50.)  Based on these allegations, the Court finds that Plaintiff has sufficiently alleged a credit defamation claim against both Defendants.

### F.      Violation of Automatic Stay and Discharge Injunction

In Count VI, Plaintiff alleges Defendants violated the automatic stay and discharge injunction of the Bankruptcy Code, 11 U.S.C. §§ 362 and 524. Defendants assert there is no private right of action for violation of the discharge injunction under § 524, therefore this claim must be dismissed.  See Barrientos v. Wells Fargo Bank, N.A., 633 F.3d 1186, 1188 (9th Cir. 2011); Walls v. Wells Fargo Bank, N.A., 276 F.3d 502, 509 (9th Cir. 2002); Pertuso v. Ford Motor Credit Co., 233 F.3d 417, 422-23 (6th Cir. 2000).  See also Joubert v. ABN AMRO Mtg. Group, Inc., 411 F.3d 452, 456 (3d Cir. 2005) (agreeing with the analysis set forth in Pertuso and Walls, and applying such analysis to Section 506(b) of the

Bankruptcy Code).

Plaintiff does not respond to this argument.  Accordingly, the Court will conclude that Plaintiff is abandoning any claim for damages under § 524, and to the extent Plaintiff asserts such a claim, it will be dismissed.

To the extent Plaintiff asserts a claim under § 362, Ocwen asserts that the Bankruptcy Code allows the bankruptcy courts to hear and determine core proceedings arising under Title 11 and allows district courts to refer all such matters to the bankruptcy courts.  See Carnes v. IndyMac Mortgage Serv., Civ. No. 10-3005, 2010 WL 5276987, at *3 (D. Minn. Dec. 17, 2010) (citing Eastern Equip. & Serv. Corp. v. Factory Point Nat'l Bank, Bennington, 236 F.3d 117, 121 (2d Cir. 2001)) (finding that a proceeding seeking damages for violation of the automatic stay is a core proceeding within the meaning of 28 U.S.C. § 157(b)(1), which must be brought in bankruptcy court.  Ocwen asserts that pursuant to the Minnesota Bankruptcy Court's Local Rule 1070-1, all bankruptcy cases and proceedings are referred to the bankruptcy judges and shall be assigned among them.

Plaintiff acknowledges that federal law provides that the district courts can refer all claims under Title 11 to the bankruptcy courts, but Plaintiff asks that the

Court retain jurisdiction in this case.  While the Court could refer the action to

bankruptcy court, Plaintiff would nonetheless file a motion to withdraw the

proceeding from bankruptcy court pursuant to 28 U.S.C. § 157(d)[2].  Because this

action involves claims in addition to the violation of the automatic stay

provisions, good cause exists to withdraw the matter from the bankruptcy court.

Based on the types of claims asserted, the Court agrees that good cause

exists to allow the claim for violation of the automatic stay provision to proceed

in this Court.

The Court notes, however, that Plaintiff's bankruptcy was discharged as of

January 30, 2009, therefore there can be no violation of the automatic stay

provision for conduct that took place after that date.  See Riley v. United States,

118 F.3d 1220, 1221 (8th Cir. 1997) (recognizing that protections from automatic

stay are in effect until bankruptcy is discharged).  There is a general allegation in

the Complaint, however, that Plaintiff received harassing phone calls from

Ocwen from 2008 through 2010.  Thus, to the extent Plaintiff bases this claim on

---

[2]"The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown.  The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce."

phone calls that took place after January 30, 2009, the claim is dismissed.  There are no allegations, however, that Saxon attempted to collect on a debt between October 15, 2008 and January 30, 2009.  Accordingly, as against Saxon, this claim must be dismissed.

**IT IS HEREBY ORDERED** that Defendant Ocwen Loan Servicing LLC's Motion to Dismiss [Doc. No. 4] is GRANTED in part and DENIED and Defendant Saxon Mortgage Services, Inc.'s Motion to Dismiss or in the Alternative for Summary Judgment [Doc. No. 14] is GRANTED in part and DENIED in part as follows: Count II, as against Saxon, is dismissed, and as against Ocwen is limited, as set forth in this Memorandum Opinion; Count III is dismissed in its entirety; Count VI is dismissed in its entirety to the extent such count is based on § 524, and to the extent this count is based on § 362, it is dismissed as against Saxon and limited as against Ocwen as set forth in this Memorandum Opinion.  With respect to the remaining claims, the motions are denied.

Date:  September 26, 2012         s/ Michael J. Davis
                                 Michael J. Davis
                                 Chief Judge
                                 United States District Court