UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Kate Barton,

    Plaintiff,

v.

Ocwen Loan Servicing LLC,

    Defendant.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 12-162 (MJD/JJG)

_____

    Thomas J. Lyons, Jr., Consumer Justice Center, P.A., Counsel for Plaintiff.

    David R. Mortensen, Wilford, Geske & Cook, P.A., Counsel for Defendant Ocwen Loan Servicing, LLC.

_____

This matter is before the Court on Ocwen Loan Servicing LLC's ("Ocwen") motion for summary judgment.

## I. Background

On September 30, 2005, Plaintiff entered into two loans - a first mortgage in the amount of $148,000 and a second mortgage in the amount of $37,000 - both secured by property located at 1185 Hillcrest Ct., Woodbury, Minnesota. (Affidavit of Eudiel Tovar ¶¶ 6, 7 (Doc. No. 12).) Saxon Mortgage Services, Inc.

1

("Saxon")[1] serviced the first mortgage from August 2008 until the property was sold following foreclosure on October 8, 2010. (Id. ¶¶ 6, 21.) HomeEq Servicing ("HomEq") serviced the second mortgage until August 31, 2010, after which time Ocwen began servicing that loan. (Mortensen Declaration, Ex. 1 (Ex. 13 to Deposition of Plaintiff) (Letter from HomEq notifying Plaintiff that the servicing of the loan would be transferred to Ocwen as of 9/1/2010).)

On October 15, 2008, Plaintiff filed a voluntary petition pursuant to Chapter 7 of the Bankruptcy Code. (Steinlage Declaration, Ex. A (Doc. No. 11-1).) In her bankruptcy proceeding, Plaintiff filed a "Chapter 7 Individual Debtor's Statement of Intention - Amended" in which she stated her intention to "retain collateral and continue to make regular payments" on the first and second mortgages to her home. (Tovar Aff., Ex. 2 (Doc. No. 12-1).) The Bankruptcy Court issued a discharge order in Plaintiff's bankruptcy on January 30, 2009. (Steinlage Decl., Ex. B (Doc. No. 11-1).) Plaintiff did not, however, execute a formal reaffirmation agreement with respect to these mortgages. As a result, both mortgages were included in the discharge, and Plaintiff was no longer

---

[1]Based on Saxon's and Plaintiff's stipulation to dismiss, this Court entered an order dismissing Saxon as a defendant on March 5, 2013.

personally liable for such debts. The parties do not dispute that the debt at issue in this case was discharged in bankruptcy.

Following the bankruptcy discharge, Plaintiff remained in her home and sought a loan modification from Saxon. (Mortensen Decl., Ex. 1 (Barton Dep. at 25-26, Dep. Ex. 5).) Plaintiff testified that she was offered a loan modification, but the resulting payment was not low enough for her to be able to stay in the home. (Id. at 30.) She then decided to sell the home in a short sale. (Id. at 28-30.)

To assist with such a sale, Plaintiff faxed to HomEq an authorization to allow her real estate agent "to receive all information pertaining to my loan." (Id. (Barton Dep. Ex. 6).) She also provided HomEq a number of documents concerning a short sale of her home. (Id. (Barton Dep. at 28-41, Dep. Exs. 6-12).) Plaintiff did receive an offer to purchase her home for $116,800. (Id. (Barton Dep. Ex. 12).) The short sale was never completed, however. (Tovar Aff. ¶ 20.)

In September 2010, Ocwen asserts it pulled Plaintiff's credit report to check the status of the first mortgage. (Lyons Decl. Ex. 1 (Deposition of Rashad Blanchard at 48, Dep. Ex. 19 at Plaintiff 0051).) The parties agree that Plaintiff spoke with an Ocwen representative by phone on two occasions in October 2010. (Mortensen Decl. Ex. 1 (Barton Dep. at 73).) Ocwen asserts that on both

occasions, Plaintiff initiated contact with Ocwen to inform Ocwen that she had filed for bankruptcy, and that she did not want to receive any more phone calls concerning the loan that Ocwen was servicing. (Ocwen Aff ¶¶ 4, 5 (Doc. No. 91).) In response to her request, Ocwen placed Plaintiff on a "do not call" list, and no further telephone contact took place after October 21, 2010. (Id.) Ocwen pulled Plaintiff's credit report two more times, on April 28, 2011 and July 27, 2011. (Blanchard Dep. Ex. 19 at Plaintiff 0102.)

From February through September 2011, several account statements were sent to Plaintiff by Ocwen concerning the second mortgage loan. (Mortensen Decl. Ex. 1 (Barton Dep. at 66-68, Ex. 21).) These statements included information as to the current principal balance of the second mortgage, the interest rate and the current amount due. (Id.) On the back of these statements was a bankruptcy disclaimer that reads "If you or your account are subject to a pending bankruptcy or your obligation referenced in this statement has been discharged in bankruptcy, this statement is for informational purposes only and is not an attempt to collect a debt." (Id.) These statements were sent despite being informed by Plaintiff in October 2010 that she had filed for bankruptcy and that the debt had been discharged. In addition, Ocwen continued to send reports to

4

credit bureaus that the account on the second mortgage was past due through October 2011.  (Lyons Decl., Ex. 1 (Blanchard Dep. at 93-94, 96-98, Ex. 5 at OCWEN 525 (lines 47 and 48), OCWEN 524 (lines 31, 34, 39 and 43), OCWEN 523 (lines 13, 14, 18, 21, 24 and 28).)

Plaintiff claims that as a result of Ocwen's actions, she was denied competitive rates on a vehicle loan in September 2011.  (Mortensen Decl., Ex. 1 (Barton Dep. at 59).)  She further claims that she has suffered from emotional distress as a result of the adverse effect Ocwen's conduct has had on her.  (Id. at 74 (conversations with Ocwen were very upsetting), Barton-McCorkle Declaration ¶¶ 6-11 (describing frustration over Ocwen's ability to listen and work with Plaintiff, feeling distraught, distressed and helpless), ¶ 15 (stating she suffered physical, as well as emotional distress because of Ocwen's actions), ¶ 18 (describing many restless and sleepless nights because of Ocwen's actions), ¶ 19 (family activities were affected by the stress caused by Ocwen's actions.)[2]

---

[2]Ocwen filed an objection to Plaintiff's declaration, asserting the statements therein conflicted with her deposition testimony.  The Court finds that Plaintiff's deposition testimony does not conflict with the statements set forth in her declaration - as those statements simply expound on the emotional distress she alleges resulted from Ocwen's actions.  Accordingly, Ocwen's objections to the declaration are overruled.

In her Complaint, Plaintiff asserted a number claims, some of which have since been dismissed. The remaining claims against Ocwen are: Count I - violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681b(f) by accessing Plaintiff's credit history without a permissible purpose; Count II - Violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692; Count IV - invasions of privacy by intrusion upon seclusion; and Count V - Credit Defamation.

## II.     Standard for Summary Judgment

Summary judgment is appropriate if, viewing all facts in the light most favorable to the non-moving party, there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The party seeking summary judgment bears the burden of showing that there is no disputed issue of material fact. Celotex, 477 U.S. at 323. "A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case." Amini v. City of Minneapolis, 643 F.3d 1068, 1074 (8th Cir. 2011) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 252 (1986)).

## III. Analysis

### A. Fair Credit Reporting Act

It is unlawful for a person to use or obtain a consumer report for any purpose unless the report is obtained for a permissible purpose. 15 U.S.C. § 1681b(a). Permissible purposes for accessing a credit report include, but are not limited to, a person seeking a credit report in connection with a possible credit transaction involving the extension of credit to, or review or collection of an account of the consumer, or for an otherwise legitimate business need to review an account to determine whether the consumer continues to meet the terms of the contract. 15 U.S.C. § 1681b (a)(3)(A) and (F)(ii). "Whether a permissible purpose existed is a question of law." Breese v. TRIADvantage Credit Servs., Inc., 393 F. Supp. 2d 819, 821 (D. Minn. 2005).

Plaintiff claims that on multiple occasions, Ocwen obtained a copy of her credit report without a permissible purpose in violation of the FCRA, because each time Ocwen accessed her report, Plaintiff's bankruptcy had been discharged and she was no longer personally liable for the second mortgage on the Woodbury home.

Ocwen argues that it had a permissible purpose in accessing and using Plaintiff's credit reports because it had a reasonable, good faith belief that it had a credit relationship with Plaintiff as evidenced by: the signed Statement of Intent filed in her bankruptcy proceeding that Plaintiff would continue to live in the home and pay on the second mortgage; documents sent to HomEq requesting a loan modification following the discharge of her bankruptcy; documents that Plaintiff sought to be considered for a short sale of the home; and evidence that Plaintiff made post discharge payments on the mortgages.

Ocwen concedes that the second mortgage was discharged in bankruptcy, but for purposes of Plaintiff's FCRA claim, Ocwen asserts that FCRA does not define "credit relationship" as one requiring personal liability. Instead, as long as the party obtaining the credit report has reason to believe a permissible purpose exists, there is no violation of FCRA. Ocwen further argues that this Court has already found that a credit relationship existed, citing to this Court's Order denying Ocwen's and Saxon Mortgage Services, Inc.'s motions to dismiss and/or summary judgment. (Doc. No. 41 at 11, ¶ 2.)

Contrary to Ocwen's assertions, this Court did not previously find a credit relationship existed in this case between Ocwen and Plaintiff. The cited portion

of the Order addresses Saxon's alternative motion for summary judgment and the facts supporting Plaintiff's claims against Saxon, which are materially different than the facts supporting the claim against Ocwen; the most important of which is the fact that Saxon serviced both mortgages prior to and after Plaintiff's bankruptcy. In denying the motion, the Court found "On this record, the Court finds that summary judgment is not appropriate as the Plaintiff disputes whether a credit relationship existed. Therefore, the record needs to be developed as to whether and when Plaintiff made voluntary payments on the first and second mortgages following the discharge in bankruptcy, and the substance of communications between the parties with regard to the mortgages." The Court made no finding that a credit relationship existed, and Ocwen's reliance on the Order for such a proposition is misplaced.

A party that has accessed a credit report may not violate FCRA if such party had a good faith belief that it had a permissible purpose to do so. See Miller v. Rubin & Rothman, LLC, Civ. No. 10-2198 (MJD/JJK), 2011 WL 4359977, at *3 (D. Minn. Sept. 19, 2011); Beckstrom v. Direct Merch.'s Credit Card Bank, Civ. No. 04-1351 (ADM/RLE), 2005 WL 1869107, at * 3 (D. Minn. Aug. 5, 2005). In making this determination, the Court should consider the intent of the party

accessing the report. Miller, 2011 WL 435997, at *3.

The evidence in this case establishes that Ocwen took over the servicing of the second mortgage as of September 1, 2010. One week later, it conducted what appears to be a hard inquiry of Plaintiff's credit report. (Blanchard Dep. Ex. 19 at Plaintiff 0050-51.) The purpose for this inquiry was to determine the status of the first mortgage. (Blanchard Dep. at 48.) There is no evidence in the record that Ocwen had actual knowledge of the fact that Plaintiff's personal liability on the second mortgage had been discharged in January 2009 when that first credit pull was completed in September 2010. Instead, Ocwen asserts that it only knew that after January 2009, Plaintiff continued to make some payments on the first and second mortgages and that Plaintiff sought a loan modification and a short sale of the home. However, Ocwen, in its motion for summary judgment, argues that its good faith belief that a credit relationship existed is supported by the Statement of Intent that she signed in January 2009 as part of her bankruptcy proceeding. (Ocwen Brief in Support of S.J. at 24.) If Ocwen had knowledge of the Statement of Intent, then a fact question is raised as to whether Ocwen was aware of her bankruptcy filing in September 2010, and whether it was aware that her bankruptcy discharge included the second mortgage. Based on these facts,

the Court finds that fact questions exist as to Ocwen's good faith belief, in September 2010, that a credit relationship existed with respect to the second mortgage.

With respect to the credit pulls in 2011, it is clear that Ocwen knew of Plaintiff's bankruptcy. Plaintiff asserts she also informed Ocwen that the debt had been discharged, while Ocwen asserts that Plaintiff refused to provide it the name of her bankruptcy attorney. If Ocwen was informed that the debt had been discharged, or given the name of Plaintiff's bankruptcy attorney to verify the discharge, Ocwen would not have had a permissible purpose to pull her report in April and July 2011, as no credit relationship existed and there was no longer any basis for a good faith belief that a credit relationship continued to exist. See Godby v. Wells Fargo Bank, N.A., 599 F. Supp. 2d 934, 942 (S.D. Ohio 2008) (finding that defendant did not have permissible purpose under FCRA to access plaintiff's credit report where the only transaction between the parties was a mortgage loan that had been discharged in bankruptcy). Because there is a fact question as to when Ocwen learned of the discharge, the Court cannot determine at this time whether Ocwen had a permissible purpose to access Plaintiff's credit report in April and July 2011.

Ocwen argues it is nonetheless entitled to summary judgment on the FCRA claim as Plaintiff has failed to demonstrate that she was damaged when Ocwen accessed her credit reports. There is some dispute as to whether the September 8, 2010 credit pull was a soft or hard inquiry. A hard inquiry is where the inquiry is visible to lenders and is used to determine creditworthiness. Ocwen' expert, John Ulzheimer, opined that such an inquiry is only a minor factor (10%) in the overall determination to approve or deny credit. (Ulzheimer Affidavit Ex. 1 at 8-9.) Ulzheimer further opined that Plaintiff's adverse credit experience is based on her bankruptcy and numerous adverse credit lines not associated with Ocwen. (Id. at 11-14.) With respect to the credit pulls in April and July 2011, it appears those pulls were soft inquiries - inquiries that are not shared with others. Ulzheimer opined that soft inquiries do not affect a credit score, and therefore cannot be the basis for actual damages. (Ulzheimer Affidavit Ex. 1 at 8.)

Plaintiff asserts that in September 2011, she was denied a car loan from several lenders. (Barton Dep. at 59; Barton-McCorkle Decl. ¶ 12.) After the denials, Plaintiff reviewed her credit reports and learned that Ocwen had accessed her reports and was illegally reporting that she was past due on a

discharged debt. (Barton-McCorkle Decl. ¶ 12.) Plaintiff asserts that because of Ocwen's actions she suffered actual damages as evidence by the denial of credit for a car, and for emotional distress. She claims that as a result of Ocwen's actions, she was distraught to the extent that she was unable to care for her three-year-old daughter, and that her daughter was affected because she was too young to understand why her mother was crying and upset. (Id. ¶ 7.) She further claims that because of Ocwen's actions, she suffered physical and emotional distress, and that she suffered from many sleepless nights and that her family was unable to participate in family activities. (Id. ¶¶ 15, 18 and 19.)

Mental pain and anxiety can constitute actual damages and are recoverable under FCRA where the plaintiff has presented competent evidence of actual injury, such as "'loss of sleep, nervousness, frustration and mental anguish' as a result of a 'grossly inaccurate consumer report.'" Taylor v. Tenant Tracker, Inc., 710 F.3d 824, 828 (8th Cir. 2013) (quoting Millstone v. O'Hanlon Reports, Inc., 528 F.2d 829, 834-35 (8th Cir. 1976)).

The Court finds that Plaintiff has demonstrated genuine issues of fact with regard to whether Ocwen's violation of FCRA caused her actual damages.

13

Plaintiff further asserts that damages are available for willful noncompliance, which covers knowing and reckless violations of the FCRA. Safeco Ins. of Am. v. Burr, 551 U.S. 47, 57 (2007). Under the standard set forth in Safeco, a willful violation of the FCRA is one that includes a reckless act or omission that created an unjustifiably high risk of violating a consumer's rights. Id. 551 U.S. at 69. If a defendant acted consistently with an objectively reasonable, albeit incorrect, interpretation of the law, the defendant's actions were not willful. Id.

As set forth above, the Court finds that there is a fact question as to when Ocwen became aware of the fact that the Plaintiff was no longer personally liable for the second mortgage it agreed to service. In addition, if Ocwen knew that Plaintiff had filed for bankruptcy, but did not follow up to determine if the debt had been discharged, a reasonable jury could find that Ocwen willfully violated Plaintiff's FCRA rights when it pulled Plaintiff's credit history when it knew or should have known that the debt was discharged and that Ocwen would not have a permissible purpose to pull the report. Accordingly, the Court will deny Ocwen's motion for summary judgment as to the FCRA claim.

### B. Fair Debt Collection Practices Act

Plaintiff claims that Ocwen's attempts to collect on a debt that was discharged in bankruptcy is a violation of federal law, as the FDCPA prohibits harassment or abuse, the use of false or misleading statements or unfair practices when collecting a debt. 15 U.S.C. §§ 1692d, 1692e and 1692f. To recover damages on a violation of the FDCPA, however, such claim must be brought within one year from the day the violations occurred. 15 U.S.C. § 1692k(d). This action was filed on January 20, 2012, therefore any communication from Ocwen prior to January 20, 2011 cannot form the basis of Plaintiff's FDCPA claim. Accordingly, Plaintiff cannot base this claim on the two phone calls between Plaintiff and Ocwen that took place in October 2010.

Plaintiff has also alleged that Ocwen sent her several letters from February through September 2011, seeking to illegally collect on the discharged debt. (Mortensen Decl., Ex. 1 (Barton Dep. Ex. 21).) Ocwen asserts these letters cannot be construed as seeking to collect on a debt, because of the disclaimer language on the back, which reads:

> If you or your account are subject to a pending bankruptcy or your obligation referenced in this statement has been discharged in bankruptcy, this statement is for informational purposes only and is not an attempt to collect a debt.

(Id.)

In determining whether a communication is misleading or unfair, such communication must be viewed through the eyes of an unsophisticated consumer. Strand v. Diversified Collection Serv., Inc., 380 F.3d 316, 317-18 (8th Cir. 2004). Such questions are typically for a jury to decide. Viewing the facts in the light most favorable to Plaintiff, the Court finds genuine issues of fact preclude summary judgment in favor of Ocwen with respect to the claim under the FDCPA. At a minimum, there are fact questions as to whether Ocwen sent out these notices with the knowledge that the debt had been discharged in bankruptcy. Under these circumstances, a reasonable juror could find that the notices were an attempt to collect a debt through misleading statements or unfair practices.

### C.    Invasion of Privacy - Intrusion Upon Seclusion

A claim for invasion of privacy, intrusion upon seclusion, will lie where there is an "intrusion; that is highly offensive to a reasonable person; into some matter into which a person has a legitimate expectation of privacy." Swarthout v. Mut. Serv. Life Ins. Co., 632 N.W.2d 741, 744 (Minn. Ct. App. 2001). "In the context of intrusion upon seclusion, questions about 'the reasonable person

standard are ordinarily questions of fact, * * * but they become questions of law if reasonable persons can draw only one conclusion from the evidence.'" Id. at 745 (quoting Hougum v. Valley Mem. Homes, 574 N.W.2d 812, 818 (N.D. 1998)).

The Court finds that Plaintiff has raised genuine issues of fact as to whether Ocwen accessed her credit report with knowledge that Plaintiff's debt had been discharged in bankruptcy. On these facts, it is for the jury to decide whether a reasonable person would be highly offended by Ocwen's access to private information such as her current credit status, her employment status, address and other information contained within such report.

## D. Credit Defamation

A claim for credit defamation is limited by 15 U.S.C. § 1681h(e), which provides:

> Except as provided in sections 1681n and 1681o of this title, no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report **except as to false information furnished with malice or willful intent to injure such consumer**. (emphasis added)

17

To demonstrate that information was furnished with malice or willful intent, Plaintiff must provide evidence that Ocwen "acted with knowledge that it was false or with reckless disregard of whether it was false or not." Thornton v. Equifax, Inc., 619 F.2d 700, 705 (8th Cir. 1980) (quoting New York Times Co. v. Sullivan, 376 U.S. 254, 279–80 (1964)).

Ocwen asserts it is entitled to summary judgment on this claim as Plaintiff has failed to demonstrate that Ocwen acted with malice or willful intent or that Plaintiff suffered damages. As previously argued, Ocwen asserts that Plaintiff has failed to establish a link between Ocwen's conduct and injury to Plaintiff. In addition, Ocwen asserts that Plaintiff has failed to demonstrate a fact issue as to whether Ocwen acted with knowledge or reckless disregard of the fact that Plaintiff no longer was personally liable for the second mortgage, given the fact that Ocwen had documents setting forth Plaintiff's initial intent to continue to pay the mortgage payments after she filed for bankruptcy, the attempted short sale, loan modification documents and post bankruptcy filing payments towards the mortgages.

The Court finds that Plaintiff has produced evidence that she notified

18

Ocwen of her bankruptcy filing and after that date, Ocwen reported to credit bureaus that the account was past due and owing despite the fact that the house had been sold by foreclosure in October 2010. (Lyons Decl. Ex. 1 (Blanchard Dep. 93-94, 96-98, 120-21), Ex. 5 at OCWEN 525 at line 59 (October 19, 2010 notation that Plaintiff had called informing Ocwen of her bankruptcy), OCWEN 524 at line 39 (January 10, 2011 notation that account reported to credit bureau with a past due amount), OCWEN 522 at line 9 (September 8, 2011 notation that account reported to credit bureau with a past due amount).) See In re Torres, 367 B.R. 478, 487-88 (Bankr. S.D.N.Y. 2007) (finding that a "credit report that continues to show a discharged debt as 'outstanding,' 'charged off,' or 'past due' is unquestionably inaccurate and misleading, because end users will construe it to mean that the lender still has the ability to enforce the debt personally against the debtor, that is, that the debtor has not received a discharge, that she has reaffirmed the debt notwithstanding the discharge, or that the debt has been declared non-dischargeable."). Accordingly, the Court finds there are genuine issues of fact as to whether Ocwen reported to credit bureaus that Plaintiff's account was past due with an escalating balance with the knowledge that such debt had been discharged in bankruptcy. Summary judgment on this claim must

therefore be denied.

IT IS HEREBY ORDERED that Defendant Ocwen Loan Servicing LLC's Motion for Summary Judgment [Doc. No. 70] is DENIED.

Date: October 25, 2013

s/ Michael J. Davis
Michael J. Davis
Chief Judge
United States District Court

Civil No. 12-162